UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LARRY STROUD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-363-GKF-PJC |
| | ) |
| (1) LIBERTY MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiff Larry Stroud, by and through his counsel of record, and for his causes of action against the Defendant Liberty Mutual Insurance Company, alleges and states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff is, and was at all times relevant herein, a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

2. Defendant is a company organized and existing under the laws of the State of Massachusetts with its headquarters and principal place of business in the State of Massachusetts that is licensed to and does engage in the business of insurance in Oklahoma.

3. Defendant is part of the Liberty Mutual group of companies. Defendant will, hereinafter, be referred to as "Liberty Mutual".

4. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five

1

thousand ($75,000.00) and there is complete diversity of citizenship between the parties.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claim occurred in this District.

## FACTS

6.  Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-5 above.

7.  On December 11, 2013, Plaintiff was traveling west on East 51st Street near South Memorial Avenue when the vehicle in front of him signaled and slowed down to make a left turn onto South 76th East Avenue. Plaintiff slowed down and observed all traffic laws when he was violently struck by the vehicle behind him. As a result of being rear-ended, Plaintiff's 2010 Kia Optima was a total loss.

8.  At the time of the accident, Plaintiff was an insured of Defendant for uninsured/underinsured ("UM/UIM") motorist coverage, Policy No. AOS-298-763297-7032 ("the Policy"), with policy limits in the amount of $50,000.00.

9.  Plaintiff did not immediately go to the emergency room following the wreck, but complained of back and neck pain. However, for the remainder of the day he continued to have increasing pain and, on the following day, he went to the Cate Chiropractic Center because of pain radiating throughout his neck, across

his shoulders, and through his right shoulder into right arm. Plaintiff was also experiencing mid and upper back pain and headaches.

10. After an examination and x-rays, Dr. Thomas Cate referred Plaintiff for an MRI of his cervical spine and placed Plaintiff on a treatment plan for cervical and thoracic strains, which required three (3) chiropractic visits per week for five (5) weeks. Plaintiff was advised to take Ibuprofen as necessary. The treatment planned called for Plaintiff to be reevaluated after the five (5) week treatment.

11. Plaintiff received an MRI on December 23, 2013. An examination of the results by Dr. Jeffrey Watts revealed that Plaintiff had a large posterior disc protrusion in his upper back near his shoulders and at the base of his neck. (*Tulsa Diagnostic Imaging – MRI cervical spine without contrast of Larry Stroud*, attached as Exhibit "1").

12. On January 14, 2014, Dr. Kris Parchuri of Orthopedic & Spine Center of Oklahoma confirmed that the MRI revealed an advanced narrowing of the spinal canal in Plaintiff's upper back that would require surgery and noted that Plaintiff denied had any symptoms prior to the rear-end wreck. (*Orthopedic & Spine Center of Oklahoma*, 01/14/14, attached as "Exhibit 2").

13. Thereafter, Plaintiff concluded his five (5) week treatment plan and, although his symptoms improved from the decompression therapy and neck adjustments from Dr. Thomas Cate, it was determined that Plaintiff needed to continue his conservative treatment plan over the next several months to see if his

symptoms would continue to improve over an extended period of time to avoid surgery.

14. Plaintiff was hesitant of undergoing surgery because he is the primary caregiver in his family and provides daily care for his wife, who suffers from several debilitating conditions that required several surgeries from 2009 to 2011 and will require several more. Despite the excruciating pain, Plaintiff did not have the time or resources to undergo surgery and provide the care necessary for his wife.

15. Plaintiff continued to treat with more conservative measures such as continuing his chiropractic treatment through Dr. Cate, receiving physical therapy on a regular basis, and attending regular visits for re-evaluation with his primary care provider.

16. Despite the conservative treatment, by May of 2014, Plaintiff's symptoms and injuries did not improve and Dr. Parchuri reiterated to Plaintiff that he needed cervical decompression and fusion surgery. (*Orthopedic & Spine Center of Oklahoma*, 05/01/14, attached as Exhibit "3"). The estimated cost of the procedure was approximately $100,000.00. (Exhibit "3").

17. Subsequently, on June 18, 2014, Plaintiff's counsel wrote to Stephanie O'Dell to inform Defendant that the tortfeasor may have inadequate insurance to compensate Plaintiff for his injuries and provided medical records and itemized statements of the medical bills for Plaintiff. (*Letter from Jacob Biby to Stephanie O'Dell*, 06/18/14, attached Exhibit "4"). Plaintiff's counsel advised

Ms. O'Dell of Dr. Parchuri's opinion that Plaintiff would require a discectomy and fusion in his upper back as a result of the severe aggravation of Plaintiff's stenosis resulting from the rear-end wreck. (Exhibit "4"). Plaintiff's counsel also provided the estimated cost for the surgery in the amount of $75,000.00-$100,000.00. (Exhibit "4"). Finally, Plaintiff's counsel made a UM/UIM demand of $350,000.00 or the UM/UIM policy limits ($50,000.00) as a result of the pain suffered by Plaintiff, the estimated cost of the surgery, and Plaintiff's medical bills in the amount of $14,449.00. (Exhibit "4").

18. Under Oklahoma law, the reasonable expenses of future medical care, treatment and services may be recovered by Plaintiff for his injuries as a result of the rear-end wreck. *See M.K.&O. Airline Transit Co. v. Deckard*, 397 P.2d 888 (Okla. 1964); *see also* OKLAHOMA UNIFORM JURY INSTRUCTIONS – CIVIL 4.1.

19. On July 7, 2014, Plaintiff's counsel received correspondence from Talicia Smart wherein she stated she would be the Claims Representative assigned to Plaintiff's bodily injury claim. She also requested a police report, recorded statement and signed medical authorization from Plaintiff.[1] (*Letter from Talicia Smart to Jacob Biby*, 07/07/14, attached as Exhibit "5").

20. About a month and a half later, on August 19, 2014, Talicia Smart notified Plaintiff's counsel that, after reviewing the medical bills and records as

---

[1] This is despite the fact that Plaintiff's counsel submitted a police report and medical records with the UM/UIM demand the previous month.

well as evaluating Plaintiff's claim, she did "not see that the claim has exceeded the limits of State Farm Insurance" and there was "no [UM/UIM] Tender due on [Plaintiff's] claim." (*Letter from Talicia Smart to Jacob Biby*, 08/19/14, attached as Exhibit "6").

21.  Several months later, on November 18, 2014, Talicia Smart gave permission to Plaintiff's counsel to settle with the tortfeasor's insurance carrier for their policy limits of $25,000.00. (*Letter from Talicia Smart to Jacob Biby*, 11/18/14, attached as Exhibit "7").

22.  After speaking with Talicia Smart on January 14, 2015, Plaintiff's counsel followed up with a letter to confirm that Plaintiff did not want his claim to be closed after Ms. Smart had requested permission from Plaintiff's counsel to close the claim as she had completed her evaluation of the claim. (*Letter from Jacob Biby to Talicia Smart*, 01/15/15, attached as Exhibit "8").

23.  The next day, on January 15, 2015, the tortfeasor's insurance carrier wrote to Plaintiff's counsel to confirm the settlement agreement of the tortfeasor's policy limits in the amount of $25,000 and provided a Release. (*Letter from Donavan Lloyd to Jacob Biby*, 01/15/15, attached as Exhibit "9").

24.  On January 22, 2015, Plaintiff's counsel wrote to Talicia Smart to advise that the tortfeasor had offered their policy limits and that Plaintiff would like to accept the offer pending Defendant's waiver of subrogation. (*Letter from Jacob Biby to Talicia Smart*, 01/22/15, attached as Exhibit "10"). Plaintiff's

6

counsel requested Defendant either waive subrogation or substitute payment. (Exhibit "10"). Defendant waived subrogation and did not substitute payment.

25.     Despite attempting to close Plaintiff's claim, Ms. Smart made several attempts to "re-evaluate" the claim by requesting information and records that were already provided by Plaintiff's counsel prior to the denial. Since that time, a new adjuster has been assigned to Plaintiff's claim and requested updated medical records, which were provided by Plaintiff's counsel.

26.     Plaintiff complied with Defendant's claims investigation for this loss, including but not limited to providing Defendant and/or its agents with Defendant's requested claim forms as well as copies of the medical bills and records relating to the treatment from the rear-end wreck. Plaintiff's counsel also provided detailed notes and explanations of Plaintiff's medical treatment, condition and necessary future medical needs.

## PLAINTIFF'S FIRST CAUSE OF ACTION: BREACH OF THE INSURANCE CONTRACT

27.     Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth in paragraphs 1-26 above.

28.     At the time of the accident, Plaintiff was an insured under an insurance policy provided by Defendant, Policy No. AOS-298-763297-7032. The policy also provided for uninsured/underinsured ("UM/UIM") motorist coverage, with policy limits in the amount of $50,000.00.

29. As a result of the bodily injuries Plaintiff suffered in the rear-end wreck, Plaintiff's medical bills are over $15,000.00 and the estimated cost of surgery for his upper back is $75,000.00-$100,000.00.

30. Defendant did not make timely payment of UM/UIM motorist coverage benefits and unreasonably denied Plaintiff's UM/UIM claim.

31. Therefore, Defendant has breached the contract of insurance.

32. As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff has suffered damages in an amount in excess of $75,000.00.

### PLAINTIFF'S SECOND CAUSE OF ACTION: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

33. Plaintiff hereby adopts and re-alleges each of the facts and allegations as set forth in paragraphs 1-32 above.

34. As an insurance company licensed to do business in the State of Oklahoma, Defendant is bound by Oklahoma statutory and common law to honor its contractual obligations to its insureds in good faith. As such, Defendant has and continues to have a duty to deal fairly and in good faith with Plaintiff, its insured.

35. Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant must conduct a full, fair and timely investigation into the nature and extent of Plaintiff's injuries suffered in the rear-end wreck at issue,

including considering all pertinent facts and circumstances in order to properly evaluate and promptly pay Plaintiff's UM/UIM claim.

36.     Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant put its own interests ahead of Plaintiff by ignoring medical records and bills for Plaintiff's injuries, medical records which confirm Plaintiff's need for surgery and the cost of such surgery, and the pain suffered by Plaintiff as a result of the rear-end wreck in an attempt to save Defendant money. Instead, Defendant conducted an inadequate investigation and focused its investigation on ways to evaluate Plaintiff's claim within the liability policy limits of the tortfeasor in order to deny Plaintiff's UM/UIM claim.

37.     Defendant breached its duty to deal fairly and in good faith with Plaintiff because Defendant has a claims handling system that encourages and incentivizes claims employees to deny potential UM/UIM claims by conducting an inadequate investigation and focusing the investigation on ways to evaluate the claim within liability policy limits.  Defendant encourages this type of claims handling environment through the training and supervision of its claims employees where the duty of good faith and fair dealing is disregarded in favor of the profitability of Defendant.

38.     As a result of Defendant's breach of its duty to deal fairly and in good faith, Plaintiff suffered damages in excess of $75,000.00.

39.     Defendant's breach of the duty of good faith and fair dealing was intentional and malicious.

40. Punitive damages should be awarded against Defendant in amount sufficient to punish Defendant and deter others.

WHEREFORE, Plaintiff Larry Stroud prays for judgment against Defendant Liberty Mutual General Insurance Company for an amount in excess of $75,000.00 for damages, punitive damages, interest, attorney fees and such other relief as the Court deems just and equitable.

Respectfully submitted,

/s/Harrison C. Lujan
Simone Gosnell Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
FULMER GROUP PLLC
P.O. Box 2448
Oklahoma City, OK  73101
Phone/Fax:   (405) 510-0077
Email:  sfulmer@fulmergrouplaw.com
hlujan@fulmergrouplaw.com
jrowe@fulmergrouplaw.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN**
**JURY TRIAL DEMANDED**