## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY STROUD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-363-GKF-PJC |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, and | ) | |
| LM GENERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S TRIAL BRIEF

Plaintiff Larry Stroud hereby submits his Trial Brief pursuant to this Court's Scheduling Order. [Doc. 49].

**I.    Duties Owed by Defendant LM General Insurance Company.**

As an insurance company selling automobile insurance policies in the State of Oklahoma, Defendant LM General Insurance Company ("LM General") owes to its insured a non-delegable duty of good faith and fair dealing.  LM General violated the duty of good faith and fair dealing owed to Mr. Stroud in the following ways:

1)    LM General refused to fairly and fully consider and evaluate facts known or knowable to it in furtherance of the claim;

2)    LM General unreasonably denied and / or delayed payment of Plaintiff's UM claim;

3)    LM General failed to give the Plaintiff's interest in receiving the full value of benefits due under the policy equal regard to its own; and

4)    LM General required Plaintiff to file suit in order to receive UM policy benefits due and owing to him.

## II.      The Facts.

The evidence in this matter supports the following:

On December 11, 2013, Plaintiff Larry Stroud was rear-ended in Tulsa, Oklahoma, by a negligent underinsured driver.[1]  Stroud's car was totaled and he suffered injuries to his back, shoulders and neck.   Stroud immediately informed his insurance company, LM General, that he had been in a car wreck and had been injured. At the time of the wreck, Stroud was insured under an automobile insurance policy providing $50,000 in uninsured/underinsured motorists ("UM") coverage.

On June 18, 2014, Plaintiff's counsel made a demand for UM policy limits to LM General adjuster Talicia Smart.   Included with that demand were the police report, photographs, and Plaintiff's complete medical records and billing statements from the collision, including physician notes indicating that "my recommendation would be for him to strongly consider undergoing surgical decompression due to the fact that he is at risk for permanent neurological injury."   A later note indicated that "[t]he estimated cost of  this  procedure…is  approximately  $100,000.00."   Despite  these  surgical recommendations, Ms. Smart evaluated the claim in the range of $17,795 to $19,795, specifically noting that she was not considering Mr. Stroud's future medical costs.   Of that amount, Ms. Smart only allocated from $3,000 to $5,000 for Mr. Stroud's general damages, including past and future pain and suffering.   Ms. Smart's general damages amounts also included nothing for permanency, and she testified she did not consider

---

[1] The negligent driver was insured under a policy of liability insurance coverage in the amount of $25,000.

such damages.  As a result, on August 19, 2014, Ms. Smart denied Plaintiff's demand on behalf of LM General on the grounds that his claim did not exceed the tortfeasor's liability limits of $25,000.

Ms. Smart's testimony indicates that she was not possessed of sufficient information to fully evaluate Mr. Stroud's claim.  In her letter denying the claim she wrote to his counsel that "[s]hould you have additional medical bills and records to send we can review at that time."  However, she did not seek any specific information from Mr. Stroud that would allow her to continue her evaluation, nor did she directly communicate that a lack of specific information prevented LM General from upholding its legal or contractual obligations to Mr. Stroud.

In May 2015, Plaintiff's claim was transferred to LM General adjuster Tina Roberts, who contacted Plaintiff's counsel.  Counsel informed Ms. Roberts that he did not agree with Ms. Smart's past evaluations, and advised her that surgery had been recommended.  Ms. Roberts assured counsel that she would reevaluate Plaintiff's claim "from scratch."  Instead, Ms. Roberts reviewed Ms. Smart's previous evaluation and merely agreed with the same.  She discussed the claim with her supervisor, Natalie Gordon, who was similarly in agreement with the evaluation.

On July 1, 2015, Plaintiff filed the present lawsuit.  As a result of the litigation, Plaintiff's claim was assigned to the "Complex team" on November 5, 2015, and LM General adjuster Mary Heinrich took over the claim.  After reviewing the same records available to Ms. Smart and Ms. Roberts, Ms. Heinrich quickly determined that: "Due to the [surgery] recommendation with the aggravation and documentation [of] family issues.

3

*This is a limits case.*" LM General paid Mr. Stroud's full policy limits on December 3, 2015.

LM General's actions, through the conduct of Ms. Smart and Ms. Roberts, constitute bad faith claims handling.  There is no dispute that Mr. Stroud was not at-fault for the automobile accident underlying his claim, nor is there any dispute that he sustained injuries in the same.  Both Ms. Smart and Ms. Roberts acknowledge that the elements of damage Mr. Stroud is entitled to recover are set forth in Oklahoma Uniform Jury Instruction 4.1 and include, among other things, the reasonable expense associated with future medical care.  Both Ms. Smart and Ms. Roberts disregarded Mr. Stroud's need for surgery and attributed no value for the same.  That senior claims handler Ms. Heinrich quickly concluded that Mr. Stroud was entitled to his policy limit is further evidence that he was indeed entitled to these benefits.  LM's refusal to fully examine *all* damages recoverable by Mr. Stroud resulted in an unreasonable denial / delay in the payment of benefits due and owing to him.  Had this action not been filed, Mr. Stroud would not have received the insurance benefits he dutifully paid to receive.

### III.    Pretrial Rulings

The Court has made several pretrial rulings in this case that are briefly summarized as follows:

- **Exclusion of the Testimony of Dr. Rick D. Beller**

Plaintiff filed a Motion in Limine No. 1 Regarding the Testimony of Rick D. Beller, M.D. [Doc. 65], on September 14, 2016, requesting the Court exclude any testimony of Dr. Beller regarding Plaintiff's medical history, given LM General's

conclusive decisions to first deny and then pay policy limits of his claim.  The Court granted Plaintiff's Motion by Order dated October 7, 2016, [Doc. 82], specifically and explicitly holding that "Dr. Beller's testimony is irrelevant to the present action."  *Id.* at pg. 3.  The Court determined that, in accordance with well-established Oklahoma law, whether the insurer acted in bad faith must be viewed as of the time performance was requested by the insured, and only on the grounds used at that time.  The Court excluded any discussion of Plaintiff Stroud's prior medical conditions by Dr. Beller, as well as precluding him from testifying as to post-accident medical records to opine as to his "end of care" date and surgical cost estimates.

LM General has now indicated that it intends to offer Dr. Beller's testimony for certain purposes despite the Court's ruling.  Plaintiff respectfully asserts that the Court has indicated that Dr. Beller's testimony is irrelevant to the issues in this case in its entirety, and there is no testimony from him that is admissible given the manner in which LM General handled Plaintiff's claim.  Plaintiff requests that the Court preclude Dr. Beller from testifying at all in this action.

- **Rulings on Plaintiff's Omnibus Motion in Limine No. 2**

1.  <u>Evidence Not Considered in Claims Decisions and Unrelated Medical History</u>

Plaintiff filed his omnibus Motion in Limine No. 2 on September 14, 2016, [Doc. 66], and the Court issued its ruling on October 7, 2016.  [Doc. 83].  For the same reasons stated in connection with the ruling on Dr. Beller, the Court excluded any testimony or evidence not considered by LM General in making its decisions on Plaintiff's claim and

any evidence or testimony regarding Plaintiff's unrelated medical history.  Again, the only evidence that is relevant to Plaintiff's bad faith claim is that which was considered and evaluated by LM General at the time those decisions were made, and LM General may not rely on any additional evidence in defending this bad faith action.

    2.    <u>Additional Rulings</u>

The Court granted Plaintiff's additional Motions in Limine as unopposed by LM General and ruled that no evidence or testimony would be admitted with regard to: a) the effect of lawsuits on insurance and/or health costs; b) mitigation of damages/collateral source, unless Plaintiff opens the door by testifying that he was unable to receive treatment; c) evidence of Plaintiff's other claims or lawsuits; and d) evidence of Plaintiff's prior bad acts, if any.

- **Rulings on Defendant's Omnibus Motion in Limine**

LM General filed its omnibus Motion in Limine on September 15, 2016, [Doc. 69], and the Court issued its ruling thereon on October 11, 2016.  [Doc. 79].  Defendant raised the following issues:

    1.    <u>LM General's Post-Suit Conduct</u>

LM General requested that the Court exclude all evidence and testimony regarding its post-suit conduct as irrelevant.  The Court denied the Motion on the basis that the insurer's investigation and evaluation of Plaintiff's claim continued after the filing of this lawsuit, and the duty of good faith and fair dealing exists during the entire time the claim is being reviewed.  In so holding, the Court stated that:

Here, LM General neither closed nor paid Stroud's UM demand by the time this action was initiated. Its decision to do so only after Stroud filed suit could be received by a reasonable jury as evidence of pretext – namely that LM General "did not *actually*" rely on its stated basis in denying Stroud's claim.

[Doc. 79, pg. 2].

### 2.   Expert Testimony

The Court excluded the testimony of Plaintiff's expert Mort Welch by prior Order, [Doc. 81], and so determined that LM General's Motion in Limine on this issue was moot.

### 3.   Amenability to Suit and Knowledge of the Law

LM General sought to exclude any reference that it can be sued for a breach of the duty of good faith and fair dealing, and/or any reference to its knowledge or obligations in this regard. The Court denied both requests, finding that Oklahoma law clearly authorizes an insurer to be sued for bad faith, and LM General's knowledge of its obligations in this regard was thus relevant to Plaintiff's claim.

### 4.   Use of the Term "Fair"

LM General requested that the Court preclude any statement by Plaintiff or his witness that it was "fair" for it to be sued for breach of the duty of good faith and fair dealing. The Court granted LM General's Motion to this extent, but did not preclude all use of the term "fair."

### 5.   Unfair Claims Settlement Practices Act

LM General requested that all references to Oklahoma's Unfair Claims Settlement Practices Act be excluded by the Court. The Court granted its Motion, rejecting

Plaintiff's argument that the Act prescribes minimum claims handling standards and should be admissible to this extent.

      6.     <u>Litigation-Related Damages</u>

LM General requested that the Court exclude all evidence or testimony related to Plaintiff's damages associated with the litigation process.  The Court granted the Motion over Plaintiff's objection.

      7.     <u>Corporate Representative Duties</u>

LM General requested that the Court exclude any reference to duties of a corporate representative beyond those imposed by Oklahoma law.  The Court denied the Motion, finding that LM General had failed to identify the evidence it sought to exclude with sufficient particularity.

      8.     <u>Additional Motions Moot</u>

Given the parties agreement, the Court found the following Motions to be moot: a) evidence as to claims handling duties or obligations that is contrary to Oklahoma law as set forth in case law and the Oklahoma Uniform Jury Instructions; b) any reference to documents not produced by Plaintiff during discovery; c) any reference to or testimony from other claims or lawsuits involving LM General; and d) any discussion of punitive damages, including LM General's financial condition, in phase one of the trial.

Respectfully submitted,


/s/Jacob L. Rowe
Simone Gosnell Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
FULMER GROUP PLLC
P.O. Box 2448
Oklahoma City, OK  73101
Phone/Fax:  (405) 510-0077
sfulmer@fulmergrouplaw.com
hlujan@fulmergrouplaw.com
jrowe@fulmergrouplaw.com

**ATTORNEYS FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**


I hereby certify that on this 5th day of December, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Tim D. Cain
Wilson, Cain & Acquaviva
300 N.W. 13th Street, Suite 100
Oklahoma City, OK  73103
timc@wcalaw.com

/s/Jacob L. Rowe